**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

DAJOHN FOSTER and JOHNISHA
FOSTER, individually and as next of kin for,
and on behalf of Wrongful Death
Beneficiaries of John Fuller

    Plaintiff,

    v.                              Case No. 2:24-cv-02433-BCL-atc

WINBRANCH COMPLEX LLC and MY
MANAGEMENT LLC, d/b/a Apartments
Near Me,,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendants' Motion for Summary Judgment in this long-running personal injury and wrongful death suit. In his motion (Doc. 47), Defendants Winbranch Complex LLC and My Management LLC, seek summary judgment on Plaintiffs DaJohn Foster and Johnisha Foster's claims of wrongful death and personal injury stemming from a shooting on Defendants' property. Doc. 47. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment**.**

## BACKGROUND

This case was initially removed from Shelby County Circuit Court on June 21, 2024.[1] Doc. 1. Decedent John Fuller resided at the multi-family apartment complex located at 3551 Dalebranch

---

[1] The case was assigned to Judge Thomas Parker upon removal. Doc. 4. It was reassigned to the undersigned in March 2026. Doc. 68.

Drive, Memphis, Tennessee 28116, commonly known as the Winbranch Complex or Winbranch Apartments. Doc. 47-2 at 1-2. Defendant Winbranch Complex, LLC, owns the Winbranch Complex and My Management, LLC manages the property.

Decedent lived at the property from 2019 until his death. *Id.* Decedent resided at 3600 Bellbranch Drive, Unit #2 on the property. *Id.* Decedent's son, DaJohn Foster ("Mr. Foster"), had resided on the premises with his father for two or three years (Doc. 62-1 at 2), despite not being a party to the lease. Doc. 47-2 at 1-2; Doc. 47-3 at 73. Indeed, the lease specifically provided that (1) Decedent would be the only occupant, (2) that any changes in occupancy must be approved by the lessor, and (3) "RESIDENT understands and agrees that visitors are not allowed for longer than two weeks occupancy in the apartment without the express written consent of LESSOR." Doc. 47-3 at 74. Mr. Foster did not pay rent, and Defendants did not know he was living at the Property. Doc. 47-2 at 2.

The personal injury and wrongful death claim stems from a shooting that occurred on May 1, 2023. Doc. 47-1 at 2. In this shooting, the decedent was killed and Mr. Foster wounded by a third-party shooter who trespassed onto the property. *Id.* at 15-16. Following this shooting, Plaintiffs brought this suit alleging that Defendants negligently managed or otherwise controlled the property, leading to Decedent's death and Mr. Foster's injury. *Id.* at 2.

Defendants employed several security measures at the Property. The Property is completely fenced on all sides. Doc. 47-2 at 3.  There is also an automated vehicle access-control gate for the Property, which requires those entering the Property to either input the correct code or use a keycard given to residents, or to use an intercom feature to call the tenant being visited if a guest. *Id.* This gate was functioning properly on the day of the shooting, and security was standing at the gate. Doc. 42 at 5. There were also 32 high resolution security cameras installed throughout

the Property, with live feeds monitored by Property management staff. Doc. 47-2 at 4. Finally, the

Property employed courtesy security officers who patrolled the Property twenty-four hours a day,

in three shifts per day. Doc. 47-2 at 4. If the security officers or other Property Management staff

observed any potentially dangerous or criminal conduct, their standard operating procedure was to

contact law enforcement, which was only two miles away. Memphis Police Department officers

routinely patrolled the neighboring roads, and they also routinely patrolled the Property. Doc. 47-

2 at 4-5.

Plaintiffs claim that Defendants owed a duty of care to them as tenants, which required

Defendants to protect them from crimes committed by third parties and which was breached by

Defendants' negligence. Doc. 1-1 at 12. In opposing Defendants' motion for summary judgment,

Plaintiffs do not make clear what, exactly, they think Defendants should have done differently,

although in their defense that might be because the Motion does not focus on the element of breach.

*See* Doc. 62 at 12-13 (Plaintiffs listing various claimed deficiencies); *see also infra* at 5-6

(discussing evidence and arguments still open to Plaintiffs).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When the moving party has carried its burden…its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *Feagin v. Mansfield Police Dep't*, 155 F.4th 595, 612 (6th Cir. 2025). "A dispute of material fact is genuine so long as the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Kirilenko-Ison v. Bd. Of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020).

In deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita*, 475 U.S. at 587. Courts do not make credibility determinations or weigh the evidence when deciding a motion for summary judgment. *See Martinez v. Cracker Barrell Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013).

## ANALYSIS

I.    **Because of their past actions and inactions in this litigation, Plaintiffs face significant constraints on the universe of materials on which they may rely.**

In at least three ways, Plaintiffs face limitations on the materials on which they may rely and the positions they may take.

*First*, as Defendants explain in their Reply, Plaintiffs failed to properly oppose Defendants' statement of undisputed material facts because Plaintiffs did not file a response (nor even file their own statement of undisputed material facts). Doc. 63 at 1-3; *see* LR 56.1. For that reason,

4

Defendants statement of undisputed material facts is taken as admitted by the Plaintiffs. *See, e.g., Akines v. Shelby Cnty. Govt.*, 512 F. Supp. 2d 1138, 1147-48 (W.D. Tenn. 2007).

*Second*, Plaintiffs failed to make disclosures as required by Rule 26(a)(1) of the Federal Rules of Civil Procedure, despite being advised of their failure to do so. Doc. 27 at 4-5. As relevant here, that Rule requires parties to disclose: (1) the names of individuals likely to have information that the disclosing party "may use to support its claims"; and (2) documents, electronically stored information, and tangible things the disclosing party "has in its possession, custody, or control and may use to support its claims." Fed. R. Civ. P. 26(a)(1). Under Rule 26(e)(1), a party must supplement its disclosures in a timely manner if "additional or corrective information has not otherwise been made to the other parties during the discovery process or in writing." Under Federal Rule of Civil Procedure 37(c)(1), a failure to make disclosure or supplement a disclosure results in the offending party being unable to use that undisclosed witness or information to supply evidence at a hearing or at trial. *See Roberts ex rel. Johnson v. Galen of Virginia, Inc*., 325 F.3d 776, 782 (6th Cir. 2003) ("Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" (quoting *Vance v. United States*, No. 98–5488, 1999 WL 455435, at *3 (6th Cir. June 25, 1999))).

This does not mean that Plaintiffs are without any evidence whatsoever. Plaintiffs may rely on the crime report they have submitted because Defendants have made no clear case for refusing to consider those reports, which were equally available to both parties and which Defendants acknowledge only came into Plaintiffs' possession (and thus within the scope of Rule 26's disclosure requirement) during the course of summary judgment briefing, when it was revealed to Defendants in Plaintiffs' opposition. Doc. 63 at 3 n.2. Plaintiffs may also rely on their own

testimony—they very fact that they are the plaintiffs makes their identities and connection to this case obvious, so that any failure to formally "disclose" them is harmless. And perhaps Plaintiffs will at trial point to other witnesses or evidence on which they may permissibly rely. For now it suffices that Plaintiffs' litigation tactics might make that an uphill argument.[2]

Finally, Plaintiffs may not rely on Mr. Foster's affidavits to the extent they contradict his earlier testimony without explanation or are based on matters about which Mr. Foster has no personal knowledge.  Defendants sum up many of these differences in their Reply. Doc. 63 at 6-7. The most obviously relevant—but not only--differences from prior statement being that Mr. Foster formerly claimed that the access gates were operational and staffed by a security guard who allowed people to tailgate or piggyback through (Doc. 42 at 11), whereas he now claims that the gate was "open and unguarded." Doc. 62-1 at 4. But a party faced with a motion for summary judgment may not create a genuine issue of material fact simply by contradicting himself without some reasonable explanation. *See, e.g., Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). And while Plaintiff now claims—in response to Defendants' affidavit to the contrary—that there were "no operable security cameras at the complex … on or about" the date of the shooting (Doc. 62-1 at 3), he could not possibly have personal knowledge of that fact (and has certainly not explained any basis for personal knowledge), rendering his testimony on the subject incapable of being reduced

---

[2] The Court does not here address Plaintiffs' experts, which are the subject of a separate motion to exclude. While Plaintiffs in opposing summary judgment do mention an inspection carried out by putative expert Stutler (Doc. 62 at 12), but that inspection was carried out in 2025, long after the shooting, and is of no help here. Doc. 62-3 at 1-2. Expert witnesses are subject to their own disclosure rule.

to admissible form and thus incapable of supporting summary judgment. *See* Fed. R. Evidence 602.

Holding in mind these constraints of the evidence and arguments available to Plaintiffs, the Court proceeds to addressing the arguments in Defendants' motion for summary judgment.

**II.     Defendants had a duty to take reasonable measures to protect Decedent from crimes committed by a third-party.**

**A.** The presence or absence of a duty is a question of law to be determined by the court. *Giggers v. Memphis Area Housing Auth.*, 277 S.W.3d 359, 365 (Tenn. 2009). The traditional rule is that an owner or operator of property owes no duty to protect persons on the property from the criminal acts of third parties. But the Tennessee Supreme Court relaxed that rule in *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996), so that the owner or operator of real property owes a duty "to take reasonable measures to protect their customers from *foreseeable* criminal attacks." *McClung*, 937 S.W.2d at 899 (emphasis added).

The analysis consists of two steps: *First*, the plaintiff must establish that "the risk is foreseeable." *Giggers*, 277 S.W.3d at 365. Foreseeability "almost always require[s] that prior instances of crime have occurred on or in" the immediate vicinity of the premises, such that the landowner knows or should know that "criminal acts against its customers are reasonably foreseeable, either generally or at some particular time." *McLung*, 937 S.W.2d at 902. "Courts must consider the location, nature, and extent of previous criminal activities and their similarity, proximity, or other relationship to the crime giving rise to the cause of action." *Id.*

*Second*, if the risk is foreseeable, the court "must then apply a balancing test based upon principles of fairness to identify whether the risk was unreasonable." *Giggers*, 277 S.W.3d at 365. That is, "when a minimum threshold of foreseeability is established, courts must engage in an analysis of the relevant public policy considerations to determine whether a duty enforceable in

tort must be imposed." *McLung*, 937 S.W.2d at 902. The nonexclusive factors to be analyzed include:

> [T]he foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by the defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*Id*. (quoting *McCall*, 913 S.W.2d at 153). "A high degree of foreseeability of harm would justify a more onerous burden than would a limited degree of foreseeability of harm. Moreover, the balancing approach recognizes that the presence or absence of prior similar incidents of crime is an important factor in determining the degree of foreseeability." *McLung*, 937 S.W.2d at 902.

Again, the parties agree that the presence or absence of a duty is a question of law to be determined by the court. *Giggers*, 277 S.W.3d at 365. "Nevertheless, courts should take precautions to avoid any invasion of the province of the jury," *id.* at 366, "and the question of duty"—by which the Tennessee Supreme Court presumably means the content of the duty as opposed to its existence, if the doctrine is to be internally coherent—"and of whether defendants have breached  that duty by taking or not taking certain actions is one for the jury to determine based on the proof presented at trial." *McClung*, 937 S.W.2d at 904.

**B.**   The Court now turns to applying that standard to the material before it.

*First*, there is the question of foreseeability. In support of foreseeability, Plaintiffs have offered police reports reflecting criminal activity in a .25 mile radius of the Winbranch Complex from May 1, 2018, through May 1, 2023 (the day of the shooting). Doc. 62-2. Among other things, this report reflects 115 aggravated assaults; 51 instances of "aggravated assault/DV"; 107 simple assaults; 293 instances of "simple assault/DV"; 2 instances of arson; 154 instances of burglary; 10 carjackings; 7 instances of "forcible rape"; 9 instances of "forcible fondling"; 4 instances of

8

"forcible sodomy"; 95 instances of intimidation; 68 instances of "intimidation/DV"; 8 kidnappings; 4 murders; and 60 robberies. *Id.* at 4-5.

Defendants argue that, in various ways, this evidence is insufficiently tied to the Property and the circumstances of the shooting here. To the extent Defendants argue that these reports do not count because the crimes were too varied, that is inconsistent with the broad view the Tennessee Supreme Court has taken when determining duty in this sort of case; as an example, in *McClung* determined that the foreseeability requirement was satisfied based on the fact that, "[i] n the seventeen months prior to the abduction, the numerous reports of crime to police on or near defendant's premises included a bomb threat, fourteen burglaries, twelve reports of malicious mischief, ten robberies, thirty-six auto thefts, ninety larcenies, and one attempted kidnapping on a parking lot adjacent to defendants' parking lot." 937 S.W.2d at 903-904; *see id.* (apparently treating as key consideration that the reported crimes "involved a significant threat of personal harm").[3] Defendants also suggest in passing that the Reports cover too much territory to be useful, but they cite no case law in support of their argument that a quarter mile radius is too large and in any event the document contains reports from the Winbranch Apartments, including trespass and violent crimes, including assault, aggravated assault, intimidation, burglary, robbery, forcible rape, and forcible sodomy. Doc. 62-2 at 48-62, 66-72. While Defendants claim they have not shown that Defendants knew of the reports, (A) that is not required, *McLung*, 937 S.W.2d at 902 (asking what

---

[3] *McClung* likewise forecloses Defendants' claim that reports of crime do not suffice because the crime might not have actually occurred. In addition, it is worth noting that it defies belief that none of the many crimes reflected in the report occurred. Defendants also argue that Plaintiffs have not showed that the Report would have been any different had it covered any other geographic part of Memphis. That is factually wrong and legally irrelevant: You don't need to be any sort of expert to know that crime rates vary by location, and in any event, Defendants offer no support for the surprising idea that a duty cannot be imposed in one part of town simply because it also was imposed in other parts of town.

reasonable landowner "should know"); and (B) they almost certainly knew of at least many of them given their much-touted cooperation with law enforcement.

*Second*, because Plaintiffs have satisfied the minimum threshold of foreseeability, the Court must consider the relevant public policy considerations to determine whether a duty enforceable in tort must be imposed." *McLung*, 937 S.W.2d at 902. The Tennessee courts have framed this analysis in a way that makes it very difficult for courts: On one hand, questions concerning the content and breach of any duty are for the trier of fact (thankfully, given courts limited competence in developing those sorts of rules), *McClung*, 937 S.W.2d at 904, but, on the other hand, many of the factors identified by the Tennessee courts seem to require at least some consideration of what the duty might entail (how else, for example, would the court consider the costs and burdens of alternative conduct), *id*.  And that analysis is particularly awkward here, where the record and Plaintiffs' litigating choices and failures establish that Defendants were doing many of the things one might expect a safety-minded apartment complex to do (e.g., cameras, gates with access codes, security patrols) and Plaintiffs have not made clear what more they would have Defendants do beyond those precautions.

Still, the Court will engage with the test on its own terms, keeping the issue of the existence of duty at issue here separate from the issues concerning the duty's content and breach, which belong to the trier of fact.  Doing so, policy supports imposition of a duty. Based on the reports submitted by Plaintiffs, the foreseeable probability of injury is quite strong, and the possible magnitude of injury from violent crime is great. And while providing housing is a great social benefit, it is also a business that benefits Defendants. Clearly, safety measures are feasible and not cost prohibitive, as Defendants are already taking some of them—which is perhaps all that matters if the issue is just the existence of a duty in and of itself (as opposed to a duty to do more, which

**10**

strays into the content of the duty and breach). In any event, nothing in the record suggests that alternative measures—perhaps more cameras, or a better gate that prevents piggybacking, or more intensive patrols—are cost prohibitive, infeasible, or useless.  Thus, considering the nonexclusive factors identified by the Tennessee courts, Defendants owed a duty to use reasonable care to keep their tenants safe from crimes committed by third parties on the premises. *Id*. (quoting *McCall*, 913 S.W.2d at 153).

*     *     *

As just noted, Defendants owed a duty to make reasonable efforts to keep their tenants safe from the criminal acts of third parties. The Court has dutifully refrained from weighing in on the content of that duty and whether it was breached—which are matters for the trier of fact and issues that Defendants did not clearly raise in their Motion for Summary Judgment and on which Plaintiffs therefore have not had a full and fair chance to respond. The Court notes, however, that despite this recognition of a duty, Plaintiffs may face an uphill battle at trial due to the record and their own litigating choices.  As mentioned above, the summary judgment record shows Defendants took many of the safety steps one might have expected of an apartment complex. And Plaintiffs' failure to make timely disclosures and fully participate in discovery may tie their hands as they attempt to show that the duty required Defendants to take some additional steps and that Defendants' failure to do so proximately caused the injuries at issue in this case. But for now, it suffices to note that Defendants' motion for summary judgment on the broad issue of duty is **DENIED**. If Defendants left other, better arguments on the table at summary judgment—a point on which the Court takes no position—by focusing overwhelmingly on the issue of duty, that is due to their own litigating choices.[4]

---

[4] Defendants also raise in a terse footnote the possibility that Plaintiffs have contractually waived their claims. The Court will not address this argument on summary judgment because Defendants have not adequately presented

11

### III.  Mr. Foster was a trespasser and his claims therefore are barred.

The undisputed facts show that, at the time of the incident, Mr. Foster had been living with Decedent for more than two years despite the provisions in the lease: (1) requiring that only Decedent would reside in Decedent's Apartment and (2) prohibiting anyone else from staying in the Apartment for more than two weeks without the written consent of Defendants. Doc. 47-3 at 74. From this, Defendants argue that Mr. Foster was a trespasser.

Plaintiffs do not dispute that, if Mr. Foster was a trespasser, his claim fails as a matter of law. That is so because under Tennessee law landowners owe trespassers no duty beyond the duty not to subject the trespasser to willfully injure them—a situation inapplicable here where the injury occurred as a result of a third party's independent criminal act. *See, e.g.*, *Kelley v. Tenn. Electric Power Co.*, 7 Tenn. App. 555, 559 (1928).

Plaintiffs do, however, claim that Mr. Foster was not a trespasser, but rather "an invited guest of a paying tenant." Doc. 62 at 16. In making this argument, Plaintiffs largely ignore that the lease prohibited his residence at the apartment; on that key point they offer only that the lease did not say that an unauthorized resident of a lessee's unit was a trespasser if they stayed past the two-week deadline. Doc. 62 at 17. But Plaintiffs' proposed magic words requirement ignores the key substance: One who "remains upon land" without authorization, *Page v. Davenport*, 1988 WL 7417, at *2 (Tenn. Ct. App. 1988), or exceeds the scope of his authorization to be on the land, *Toole v. Levitt*, 492 S.W. 2d 230, 233 (Tenn. Ct. App. 1972), is a trespasser. Plaintiffs have cited no authority supporting the surprising proposition that Decedent's permission, as a tenant, for Mr.

---

it. *See Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 43 F.3d 1054, 1058–1059 (6th Cir.1995) (an issue only "drop[ped]" in a footnote and not raised in the statement of issues or argument section of a brief is not properly raised before the Court).

**12**

Foster to live at the unit trumps Defendants' prohibition, as the landlord, on anyone other than Decedent staying there. As a result, Mr. Foster is a trespasser and Defendants motion for summary judgment on claims relating to his injuries is GRANTED.

### IV.   Plaintiffs' damages, if any, are subject to statutory caps.

**A.** In their Motion for Summary Judgment, Defendants argue that, under Tenn. Code Ann. 29-39-102, Plaintiffs' noneconomic damages are capped at $750,000.  That provision by its plain language applies:

> In a civil action, each individual plaintiff may be awarded … [c]ompensation for any noneconomic damages suffered by each injured plaintiff not to exceed seven hundred fifty thousand dollars ($750,000) for all injuries and occurrences that were or could have been asserted, regardless of whether the action is based on a single act or omission or a series of acts or omissions that allegedly caused the injuries or death.

Tenn. Code Ann. § 29-39-102(a)(2); *see also id.* at (b) (providing for division of noneconomic damages within the cap to be apportioned among all tortfeasors unless plaintiff is more than 50% at fault, in which case "recovery for any damages is barred"). Plaintiffs offer no response to the straightforward statutory text.  Thus, the Court GRANTS Defendants' motion for summary judgment based on the statutory cap on noneconomic damages.

**B.**   Defendants are also entitled to summary judgment on Plaintiffs' request for punitive damages. Under Tennessee law, punitive "damages must be supported by clear and convincing evidence that the defendant acted intentionally, fraudulently, maliciously, or recklessly." *Goff v. Elmo Greer & Sons Constr. Co.*, 297 S.W. 3d 175, 187 (Tenn. 2009). No reasonable jury could find that standard met on this record, which shows that Defendants employed many safety measures and techniques, including 32 cameras, roving 24/7 safety patrols, fencing, and an access gate. *See supra* at 2-3. Perhaps Plaintiffs can show that Defendants violated the duty of care by failing to take some additional action that they had not already taken—but that would

13

show only the negligence needed to recover compensatory damages. There is no support for any

finding any more culpable mental state, much less by clear and convincing evidence. The Court

therefore GRANTS Defendants' motion for summary judgment on punitive damages.

### **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED IN**

**PART AND DENIED IN PART**.

**IT IS SO ORDERED**, this 14th day of May, 2026.

s/ *Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE

14